IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CR-44-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SERVANDO MENDOZA, | ) | |
| | ) | |
| Defendant. | ) | |

On October 11, 2024, Servando Mendoza ("Mendoza" or "defendant''), through counsel, moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10(c), and Amendment 821 of the United States Sentencing Guidelines ("Amendment 821") [D.E. 40]. On January 23, 2025, probation filed a report concerning Mendoza's motion for a sentence reduction [D.E. 41]. In that report, the United States acknowledged the court's discretion to reduce Mendoza's sentence [D.E. 41-1], and Mendoza asked the court to reduce his sentence from 96 months to 77 months [D.E. 41-2, 41-4]. On August 26, 2025, the case was reassigned to the undersigned [D.E. 42]. On February 6, 2026, Mendoza, proceeding pro se, moved for a status update [D.E. 44]. As explained below, the court denies Mendoza's motion for a sentence reduction and denies as moot Mendoza's motion for a status update.

I.

On May 15, 2023, with a written plea agreement, Mendoza pleaded guilty to possession with intent to distribute methamphetamine and cocaine (count one). See [D.E. 17, 18, 19]. On August 24, 2023, United States District Judge Terrence Boyle held Mendoza's sentencing hearing. See [D.E. 30]. At the sentencing hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 33] 1; PSR [D.E. 26]; Fed. R. Crim. P. 32(i)(3)(A)–(B).

Case 7:23-cr-00044-D    Document 45    Filed 03/02/26    Page 1 of 7

The court calculated Mendoza's total offense level to be 29, his criminal history category to be I, and his advisory guideline range to be 87 to 108 months. See [D.E. 33] 2. After receiving argument from Mendoza and the United States, the court denied Mendoza's request for a downward variance. See [D.E. 30] 1. The court sentenced Mendoza to 96 months' imprisonment on count one. See [D.E. 32] 2.

## II.

Under 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's term of imprisonment if the defendant has been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered" by changes to the United States Sentencing Guidelines. 18 U.S.C. § 3582(c)(2); see United States v. Barrett, 133 F.4th 280, 282–83 (4th Cir. 2025); United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019); United States v. Williams, 808 F.3d 253, 257–58 (4th Cir. 2015). A sentence reduction under 18 U.S.C. § 3582(c)(2) must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(2); Williams, 808 F.3d at 257. The Sentencing Commission policy statement in U.S.S.G. § 1B1.10 applies to section 3582(c)(2) proceedings. See Dillon v. United States, 560 U.S. 817, 819, 821 (2010); Martin, 916 F.3d at 396; Williams, 808 F.3d at 258.

The sentencing court follows a two-step inquiry when reviewing motions for sentence reductions under section 3582(c)(2). See Dillon, 560 U.S. at 826–27; Martin, 916 F.3d at 396; Williams, 808 F.3d at 258. First, the sentencing court must review the Sentencing Commission's instructions in U.S.S.G. § 1B1.10 "to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Williams, 808 F.3d at 257–58 (cleaned up). At this step, section 1B1.10 requires the court to begin by "determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect

2

at the time of the initial sentencing." Dillon, 560 U.S. at 827 (cleaned up). If the court determines that the defendant is eligible for a sentence reduction, "the court moves to the second step and determines the extent of the reduction." Williams, 808 F.3d at 258. At step two, section 3582(c)(2) "instructs a court to consider any applicable [section] 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827; see, e.g., United States v. Navarro-Melendez, No. 1:18-CR-91, 2024 WL 1722524, at *1 (W.D.N.C. Apr. 22, 2024) (unpublished), aff'd, No. 24-6627, 2024 WL 4579416 (4th Cir. Oct. 25, 2024) (per curiam) (unpublished); United States v. Pledger, No. 2:12-CR-23, 2017 WL 3495723, at *1–2 (E.D.N.C. Aug. 14, 2017) (unpublished).

In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585 U.S. 109, 115–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81, 490 (2011); United States v. Moody, 115 F.4th 304, 315–16 (4th Cir. 2024); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024); United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. High, 997 F.3d 181, 187–91 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam); United States v. McDonald, 986 F.3d 402, 410–12 (4th Cir. 2021); Martin, 916 F.3d at 395–98.

Mendoza moves for a sentence reduction based on Amendment 821 Part B. See [D.E. 40] 1; [D.E. 41-2] 1. Amendment 821 Part B, which became effective on November 1, 2023, amended Chapter Four of the Sentencing Guidelines by inserting at the end a new Part C. See U.S.S.G.

3

app. C, amend. 821. Section 4C1.1, Adjustment for Certain Zero-Point Offenders, decreases a defendant's offense level by two levels if the defendant did not receive any criminal history points and his offense of conviction did not include any listed aggravating factors. See id. § 4C1.1. Section 1B1.10 authorizes a court to reduce a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) using Amendment 821. See id. § 1B1.10(d); Barrett, 133 F.4th at 282–83.

At step one, the court calculates Mendoza's new advisory guideline range to be 70 to 87 months' imprisonment based on a total offense level 27 and a criminal history category I. See [D.E. 41] 1. At step two, the court has reviewed the entire record, the parties' arguments, the new advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 490–93; Moody, 115 F.4th at 315–16; Davis, 99 F.4th at 659; Smith, 75 F.4th at 464–66; United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023); United States v. Swain, 49 F.4th 398, 402 (4th Cir. 2022); United States v. Chambers, 956 F.3d 667, 671–75 (4th Cir. 2020), abrogated on other grounds by Concepcion v. United States, 597 U.S. 481 (2022); United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished).

The section 3553(a) factors counsel against reducing Mendoza's sentence. Mendoza is 39 years old and engaged in brazen criminal behavior. See PSR ¶¶ 6–7. In 2002, Mendoza illegally entered the United States. See id. at ¶ 21. On May 9, 2018, state prosecutors charged Mendoza with driving without a valid license and following too close. See id. at ¶ 18. On May 10, 2018, ICE arrested and removed Mendoza from the United States for being an alien without admission or parole. See id. at ¶ 16. Mendoza was not deterred. In early 2021, confidential informants ("CI") told the United States Drug Enforcement Administration and local law enforcement that Mendoza was a "major supplier" of cocaine and methamphetamine in Wilmington, North Carolina. See id. at ¶ 6. In December 2021, Mendoza sold one kilogram of methamphetamine

4

and two kilograms of cocaine to a CI. See id. In February 2022, a CI told law enforcement that Mendoza regularly drove to Atlanta, Georgia, for three-to-five kilograms of methamphetamine and cocaine to unleash in Wallace, Rocky Point, and Wilmington, North Carolina. See id. The CI advised that Mendoza charged $2,400 per ounce of cocaine and $900 per ounce of methamphetamine. See id. On February 4, 2022, Mendoza sold 28.54 kilograms of methamphetamine (actual) to a CI. See id. On February 8, 2022, digital surveillance of Mendoza revealed that he drove from his residence to a city outside Atlanta and back. See id. On February 14, 2022, Mendoza sold 57.52 kilograms of methamphetamine (actual) to a CI. See id.

On February 21, 2022, law enforcement performed a traffic stop of Mendoza after noticing Mendoza en route from Atlanta. See id. Mendoza, his girlfriend, and their one-year-old child occupied the vehicle—as did illegal narcotics. See id. From a search of the vehicle, law enforcement recovered 71.01 grams of methamphetamine (actual), 498.3 grams of cocaine, and $3,798. See id. On February 22, 2022, Mendoza admitted on a jail phone to family that he was guilty of possessing narcotics. See id. at ¶ 7. In total, Mendoza distributed or possessed with the intent to distribute 157.07 grams of methamphetamine (actual), 1,000 grams of methamphetamine, and 2,543.16 grams of cocaine, equaling a converted drug weight of 5,650.03 kilograms. See id.

Mendoza cites some positive steps he has taken while federally incarcerated, such as participating in educational programming, maintaining work assignments, and paying his special assessment. See [D.E. 41-2] 1; [D.E. 41-3] 1–21; cf. Pepper, 562 U.S. at 491–92. Mendoza also emphasizes that he has not incurred any infractions while incarcerated, but the court expects the same from all inmates. See [D.E. 41-2] 1.

The court has considered the entire record and all relevant policy statements. See Concepcion, 597 U.S. at 494–95 & n.4; Pepper, 562 U.S. at 490; Moody, 115 F.4th at 315–16;

Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 410–12; Martin, 916 F.3d at 398. Mendoza twice illegally entered the United States and flooded North Carolina with out-of-state methamphetamine and cocaine. Mendoza's appalling criminal conduct demonstrates his disrespect for the law. The court has balanced Mendoza's rehabilitation efforts while federally incarcerated with his serious criminal conduct, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. See Concepcion, 597 U.S. at 496–502; Pepper, 562 U.S. at 480–81; Moody, 115 F.4th at 315–16; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. Having considered the entire record, the section 3553(a) factors, the parties' arguments, the need to punish Mendoza for his serious criminal behavior, to incapacitate Mendoza, to promote respect for the law, to deter others, and to protect society, the court denies Mendoza's motion for a sentence reduction See, e.g., Concepcion, 597 U.S. at 496–502; Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; Moody, 115 F.4th at 315–16; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020). Even if the court miscalculated the new advisory guideline range, the court would impose the same sentence as an alternative variant sentence in light of the entire record and the section 3553(a) factors. See 18 U.S.C. § 3553(a); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 161–65 (4th Cir. 2012).

In light of this order, the court denies as moot Mendoza's motion for a status update on his motion for a sentence reduction. See [D.E. 44].

### III.

In sum, the court DENIES defendant's motion for a sentence reduction [D.E. 40] and

6

DENIES AS MOOT defendant's motion for a status update [D.E. 44].

SO ORDERED. This 2 day of March, 2026.

JAMES C. DEVER III
United States District Judge